UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                          :

SHANNON F. WITHUS,             :
                          :
               Plaintiff,    :
                          :
        -v-               :
                          :
ANDREW SAUL,              :
*Commissioner of Social Security*,   :
                          :
              Defendant.   :
                          :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/19/2021

18-CV-10923 (VSB) (JLC)

**OPINION & ORDER**

Appearances:

Josephine Gottesman
Dennis Kenny Law
Newburgh, NY
*Counsel for Plaintiff*

Prashant Tamaskar
Social Security Administration
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Shannon Withus ("Plaintiff" or "Withus") brings this action pursuant to § 205(g)

of the Social Security Act (the "SSA"), 42 U.S.C. § 405(g), seeking judicial review of a

determination by the Commissioner of Social Security (the "Commissioner")[1] that she is not

entitled to Supplemental Security Income ("SSI") benefits.  Plaintiff and Defendant cross-moved

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

On December 19, 2019, Magistrate Judge James L. Cott issued a detailed and thorough Report

---

[1] Commissioner of Social Security Andrew Saul is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

and Recommendation ("Report" or "R&R"), recommending that Plaintiff's motion for judgment on the pleadings be denied and that the Commissioner's cross-motion for judgment on the pleadings be granted. (R&R.)[2] Before me are Plaintiff's objections to the Report. Because I find that Magistrate Judge Cott properly determined that (1) even if the Administrative Law Judge ("ALJ") erred by not explicitly weighing certain opinion evidence, any such error was harmless; (2) the ALJ sufficiently developed the administrative record; (3) the ALJ properly considered Plaintiff's limitations when determining Plaintiff's residual functional capacity; and (4) the ALJ's determination was supported by substantial evidence, I adopt the Report in full, and overrule Plaintiff's objections.

## I.    Factual Background and Procedural History

I assume the parties' familiarity with the facts and record of prior proceedings, and restate briefly only the information necessary to explain my decision.[3] Plaintiff, who was 22 years old at time of her SSI application, alleges disability dating back to her birth. (R. 12, 52, 147.)[4] Plaintiff applied for SSI benefits on October 28, 2014. (*Id.* at 12.) Plaintiff applied for SSI based on several alleged medical conditions: attention deficit disorder ("ADD"), depression, anxiety, and borderline IQ.[5] (*Id.* at 151.) She completed the 12th grade in June 2012, earning a special education diploma, but has never been employed. (*Id*. at 19, 151–52.) At the time of her hearing, Plaintiff was attending classes three days a week in the morning to earn her GED, but

---

[2] "R&R" refers to Judge Cott's December 19, 2019 Report and Recommendation. (Doc. 22.)

[3] A more detailed description of the underlying facts and procedural history is contained in Judge Cott's Report and Recommendation. (Doc. 22.)

[4] "R." refers to the Social Security Administration Administrative Record. (Doc. 11).

[5] Although the administrative record includes some evidence of physical impairments, (*see* R. 15, 264, 267–68, 275, 278, 284), these conditions were not discussed at the hearing, developed in the record, or addressed in Plaintiff's motion. Because she only contests the ALJ's conclusions regarding her mental impairments, I do not recount her alleged physical impairments.

failed the math portion of the test twice.  (*Id.* at 19–20.)

Plaintiff began seeing mental health counselors in 2006, in both group and individual therapy sessions.  (*Id.* at 222, 293, 294.)  Plaintiff regularly saw Licensed Mental Health Counselor Laura Bernabe of Summit Counseling & Wellness Group and Nurse Practitioner Anne Paden.  (*Id.* at 294, 228.)  In an assessment dated April 2, 2008 Plaintiff's diagnoses were listed as depression, adjustment disorder, and ADHD.  (*Id.* at 191, 196.)[6]  Plaintiff's treatment with Adderall was described as "wonderful."  (*Id.* at 191.)  The assessment noted that Plaintiff's speech was normal, she had good abstraction and impulse control, and limited concentration. (*Id.* at 195.)

Plaintiff's treatment records indicate that over the following years she experienced a variety of symptoms that would come and go, including depression, difficulty focusing, and anxiety.  (*See id.* at 202, 206, 241, 243) (reporting feeling depressed); (*id.* at 199, 201, 202, 204, 206–08, 210–12, 239, 244) (reporting no depression); (*id*. at 197, 206, 212) (reporting issues focusing); (*id.* at 197–99, 201, 210, 212, 208–09, 241, 244) (reporting improved grades, focusing or concentrating well, studying for GED); (*id.* at 198–99, 201, 242) (reporting anxiety).  Her treatment records also indicate that Plaintiff has taken numerous medications, including Strattera, Vistaril, Wellbutrin, Adderall, and Fluoxetine on and off beginning around 2008.  (*Id.* at 197, 199–200, 202, 204, 207.)  In January 2014, however, Plaintiff discontinued taking all medications, and in March 2015, Plaintiff stated that she was feeling better after two years

---

[6] I agree with Judge Cott's observation that it is unclear whether the psychiatric assessment dated April 2008, (R. 191–96), and the progress notes included in the record from 2008–2017, (*id.* at 197–216, 239–44), are attributable to Bernabe or Paden, as they are unsigned.  (*See* R&R 3–4 n.3.)  Although the ALJ ascribes the notes to Bernabe, (R. 20), as does the Court Transcript Index (*see* Court Transcript Index, Exhibits 1F, 2F), Plaintiff's memorandum of law attributes all progress notes to Paden, (Doc. 13 at 5, 8–9).  I agree with Judge Cott's assessment that given the fact that Bernabe's name is written under the "How Referred" section of the assessment and considering a comparison of the handwriting, it seems likely the notes were written by Paden.  (R&R 3–4 n.3.)  Regardless, as discussed below, given that neither are "acceptable medical sources" and the ALJ's consideration of their opinions and notes, the uncertainty as to the author does not affect my determination.

without them, and that she "felt like [a] zombie [on medications]." (*Id.* at 208–09, 239.) Treatment notes from September and December 2015 indicate that Plaintiff began taking Wellbutrin again, and between at least May and October of 2016 she was taking Wellbutrin and Lexapro. (*Id.* at 243–44, 273, 276, 279.)

Numerous medical source statements, treating source statements, and mental impairment questionnaires are part of the record in this case.[7] Bernabe prepared two treating source statements, and a mental health questionnaire. On June 22, 2015, Bernabe prepared a treating source statement in which she indicated that she has seen Plaintiff once every three weeks since November 22, 2006, and listed Plaintiff's diagnoses as major depression and ADHD. (*Id.* at 217–19.) Bernabe observed that Plaintiff has an "inability to focus, concentrate, multitask," and "mood dysregulation which leads to inability to function in activity of daily living (not showering, getting out of bed)." (*Id.*) She noted that Plaintiff's "behavior is bizarre at times," Plaintiff has a good attitude and normal appearance, and that her thoughts and perception were normal. (*Id.*) Bernabe also completed a mental impairment questionnaire in July 2015. (*Id.* at 222–27.) In the questionnaire, she indicated that Plaintiff's responsiveness to treatment was high and had been benefiting from continued therapy. (*Id.* at 222.) However, she also opined that Plaintiff "has a lack of concentration . . . has a hard time focusing on tasks at hands . . . [and] is extremely impulsive." (*Id.*) She noted that her prognosis was fair to poor. (*Id.*) She further opined that Plaintiff had "extreme" functional limitations with respect to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (*Id.* at 226.) She concluded that Plaintiff can only follow one-step instructions, cannot complete

---

[7] A "medical source statement" is a statement from a physician or another health care professional regarding a patient's medical or mental health impairments and the impact those impairments have on the type of work-related activities the patient may or may not be able to participate in. *See Medical Source Statement*, Disability Benefits Center, https://www.disabilitybenefitscenter.org/glossary/medical-source-statement (last visited May 18, 2021).

tasks, needs to be told when to bathe, change, and brush her teeth, and is "not socially appropriate." (*Id.* at 225.) Bernabe estimated that Plaintiff's impairments would cause her to be absent from work for more than four days per month, and noted that Plaintiff "doesn't function when there is change. She will panic when overwhelmed." (*Id.* at 227.) On May 11, 2017, Bernabe completed a second mental impairment questionnaire in which she reiterated her earlier opinions. (*Id.* at 245–50.) Finally, on August 6, 2017, Bernabe prepared another treating source statement in which she again opined that Plaintiff struggled with concentration, impulsivity control, and understanding directions. (*Id.* at 294.) She stated that Plaintiff "worked very hard on managing her emotions in healthy ways," despite years of struggling on and off with depression and anxiety. (*Id.*)

Kristin Laux, a nurse practitioner who sees Plaintiff annually, completed a treating source statement and medical source statement for Plaintiff. In Laux's June 23, 2015 treating source statement, she indicated that Plaintiff has depression and ADD, and that Plaintiff's depression causes fatigue. (*Id.* at 220.) She observed that Plaintiff had no limitations in her ability to lift and carry, stand or walk, sit, or push and pull. (*Id.* at 221.) In Laux's July 10, 2017 medical source statement, she described Plaintiff's ability to do physical work-related activities. (*Id.* at 257–62.)

Paden, a psychiatric nurse practitioner who treated Plaintiff, completed a mental impairment questionnaire on May 31, 2017. (*Id.* at 251–56.) Paden identified that Plaintiff suffered from generalized persistent anxiety, emotional withdrawal or isolation, hyperactivity, easy distractibility, sleep disturbance, and recurrent severe panic attacks occurring on the average of at least once a week. (*Id.* at 252.) Paden evaluated Plaintiff as being "unable to meet competitive standards" in all mental abilities and aptitudes needed to do unskilled work,

semiskilled work, skilled work, and particular types of jobs.  (*Id.* at 253.)  Finally, she assessed

Plaintiff to have "marked" functional limitations in activities of daily living, maintaining social

functioning, and maintaining concentration, persistence or pace.  (*Id.* at 255.)

Psychologist Lauren Stack, Ph.D., conducted a consultative evaluation of Plaintiff on

July 16, 2015.  (*Id.* at 228–33.)  She observed that Plaintiff's "manner of relating was adequate,"

her thought processes were coherent, her speech was appropriate, her attention and concentration

were mildly impaired due to anxiety or nervousness and ADHD, her recent and remote memory

skills were impaired due to ADHD and learning disability, her cognitive functioning was

somewhere below average, and her insight and judgment were fair.  (*Id.*)  Dr. Stack noted that:

> [Plaintiff] has no impairment in her ability to follow and understand simple
> directions and instructions or perform simple tasks independently.  She has mild
> impairment in her ability to make appropriate decisions.  [Plaintiff] has moderate
> impairment in her ability to maintain attention and concentration, maintain a regular
> schedule, learn new tasks, perform complex tasks independently, relate adequately
> with others, and appropriately deal with stress.  These difficulties are caused by
> cognitive deficits and symptoms of depression, anxiety, and panic.

(*Id.* at 231.)  Dr. Stack opined that these difficulties were consistent with psychiatric and

cognitive problems, and that these "may significantly interfere with [Plaintiff's] ability to

function on a daily basis."  (*Id.*)

Psychologist Alex Gindes, Ph.D., conducted an intelligence evaluation of Withus on

August 20, 2015.  (*Id.* at 234–38.)  Dr. Gindes assessed Plaintiff's Full Scale IQ to be 75—

overall, in the "borderline range of intellectual functioning."  (*Id.* at 235–36.)  He evaluated her

scores to be normal with respect to verbal reasoning skills and processing new information, and

in the borderline range for vocabulary, general fund of knowledge, short-term recall, arithmetic,

abstract reasoning skills, and visual motor coordination skills.  (*Id.* at 236.)  He noted that

Plaintiff dresses, bathes, and grooms herself, she does not cook, clean, do laundry, shop, manage

money, or drive a car, and she has a number of good friends and gets along with her family. (*Id.*)

He issued the following medical source statement:

> The claimant is able to follow and understand simple directions and instructions and perform simple tasks independently with no limitations. Her abilities to maintain attention and concentration and maintain a regular schedule are moderately limited. She can learn new tasks with mild limitations. Her ability to perform complex tasks independently is moderately limited. She can make appropriate decisions and relate adequately with others with no limitations. Her ability to appropriately deal with stress is moderately limited. The claimant's difficulties are caused by depression associated with cognitive deficits. The results of the examination appear to be consistent with cognitive problems that may significantly interfere with the claimant's ability to function on a daily basis.

(*Id.*) Dr. Gindes diagnosed Plaintiff with unspecified depressive disorder, and ADHD by history. (*Id.*)

SSA Evaluator Dr. M. Marks conducted an assessment of Plaintiff's mental residual functional capacity in August 2015 as part of Plaintiff's initial SSI application. (*Id.* at 51–60.) Dr. Marks concluded that Plaintiff had moderate limitations in her ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.* at 57–58.) He opined that she was markedly limited in her ability to carry out detailed instructions, but not significantly limited in her ability to carry out short and simple instructions, work in coordination with others, or make simple work-related decisions. (*Id.*) Dr. Marks assessed that Plaintiff has:

> [m]ildly impaired attention, concentration, and memory skills [and] below average cognitive functioning with limited fund of information, fair insight and judgment . . . [Plaintiff] is moderately disabled in ability to maintain attention/concentration, maintain regular schedule, learn new tasks, perforn [sic] complex tasks independently, relate adequately with others, ans [sic] appropriately deal with stress. IQ is in the borderline range. . . . [Plaintiff is] able to understand and remember simple instructions only, she is able to maintain an ordinary routine with

some extra support.  She is able to interact and adapt without marked limitations.

(*Id.* at 59.)  He further stated that the data are consistent with "severe impairments," but noted

that Plaintiff's credibility was partial given the examinations suggesting that Plaintiff only had

moderate functional limitations.  (*Id.*)

Finally, Plaintiff's mother, Patricia Flanagan, submitted a third-party function report.  (*Id.*

at 158–65.)  She reiterated that Plaintiff becomes panicked in new situations, can only

understand one step directions, and rarely completes tasks when given to her.  (*Id.* at 158.)

According to Flanagan, although Plaintiff attends school, she "usually does not make a complete

week."  (*Id.* at 159.)  Flanagan indicated that she must remind her daughter to wear clean clothes,

bathe regularly, wash her hair, groom herself, and take her medications.  (*Id.* at 159–60.)

However, Plaintiff is able to feed herself and use the toilet without assistance.  (*Id.*)  Plaintiff

does not prepare her own meals because she becomes distracted, and will leave food on the stove

or in the oven.  (*Id.* at 160.)  Additionally, Flanagan indicated that Plaintiff likes to read, watch

television, play video games, swim, watch birds, and spend time with her two friends.  (*Id.* at

162.)  Finally, Flanagan stated that Plaintiff does not handle stress or changes in routine well,

and when faced with these challenges, Plaintiff "shuts down completely," and "usually will not

attend [school] or stays home and sleeps."  (*Id.* at 164.)

At the hearing before the ALJ, video testimony was taken from Plaintiff and vocational

expert Robert Baker, MS, CRC.  (*Id.* at 31–49.)  Plaintiff testified that she was looking for a job,

but believed that employers did not want to hire her because they "probably" wanted someone

with a high school diploma, whereas she has a special education diploma.  (*Id.* at 34.)  She also

mentioned that she was taking classes to earn her GED three days a week from around 7:15 a.m.

to around noon.  (*Id.* at 36.)  Plaintiff described that she completes chores around the house,

including taking care of animals, doing the dishes, sweeping, vacuuming, and cleaning the windows. (*Id.* at 36–37.) The ALJ asked whether Plaintiff thought she "might be able to do a job like a cleaning person," and Plaintiff responded "Yeah." (*Id.* at 38.) At the ALJ's suggestion that cleaning houses may be suitable employment given her daily activities and when the ALJ asked whether Plaintiff had considered employment along those lines, Plaintiff replied that such a position "could be a good job for [her], maybe." (*Id.* at 38.) The ALJ also suggested that a stock person in a store at night might be a potential job for Plaintiff because she would not have to deal with crowds; Plaintiff stated that she "maybe" could do a job like that. (*Id.* at 38–39.) Plaintiff also reiterated that when her depression hits her, she cannot leave the house or bed, sometimes for up to two weeks. (*Id.* at 39.)

Vocational expert Robert Baker then testified. The ALJ posed a hypothetical of a person of Plaintiff's age, education, and work experience who could perform any exertional level but was limited in that the job "would have to be very simple, basic, unskilled, routine, repetitive type of work" with no more than 20 people around the employee at a time, and asked Baker what jobs such a person could perform. (*Id.* at 46.) Baker opined that such a person could perform the work of a collator operator, a router, a domestic laundry worker, or a cleaner housekeeper, and provided employment statistics. (*Id.* at 46–47.) Baker was then questioned by Plaintiff's attorney, and stated that lack of a high school diploma could affect the employment numbers he provided, and that a person with periods of absenteeism amounting to up to 40 days a year and a person who is off task 15 percent of the workday would not be able to sustain employment. (*Id.* at 48.)

On October 8, 2017, in a written decision, the ALJ concluded that Plaintiff was not eligible for benefits. (*Id.* at 9.) The ALJ found that claimant had severe impairments of ADHD,

depressive disorder, intellectual disability, and borderline intellectual functioning, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 416.920(d). (*Id.* at 14–18.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that she could only perform simple, basic, unskilled, routine, repetitive type work. (*Id.* at 19–24.) Finally, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that plaintiff could perform. (*Id.* at 25–26.)

Plaintiff sought review by the Appeals Council, which denied Plaintiff's request for review on September 24, 2018. (*Id.* at 1.) Plaintiff filed this action on November 21, 2018. (Doc. 1.) I referred the case to Judge Cott on November 26, 2018. (Doc. 6.) Plaintiff filed her motion for remand on June 6, 2019, (Docs. 12–13), and Defendant cross-moved for judgment on the pleadings on September 20, 2019, (Docs. 19–20). Plaintiff filed a reply on October 9, 2019, (Doc. 21); Defendant did not file a reply. Judge Cott issued his Report on December 19, 2019. (Doc. 22.) Plaintiff filed her objections on January 15, 2020. (Doc. 25.) Defendant did not file a response. On October 29, 2020, Plaintiff filed a motion to expedite the decision. (Doc. 26.) Plaintiff's counsel then called chambers to check on the status of the decision, and I indicated that a decision was in progress. On May 3, 2021, Plaintiff filed a second letter motion to expedite the decision, (Doc. 27), and I issued an endorsement indicating that my decision was forthcoming, (Doc. 28).

## II.   **Legal Standards**

### A.  *Review of the Commissioner's Decision*

In reviewing a social security claim, "it is not [the court's] function to determine *de novo* whether plaintiff is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007).  Instead, a reviewing court considers merely whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").  "Substantial evidence" means "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).  It is "a very deferential standard of review—even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).  "The substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (internal quotation marks omitted).

### B.  *Disability Standard*

To be considered disabled under the SSA, a claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last for at least 12 months, that is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work."

42 U.S.C. §§ 423(d)(1)(A), (2)(A). The Commissioner has established a five-step evaluation

process to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in
> substantial gainful activity. If [s]he is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which significantly limits h[er]
> physical or mental ability to do basic work activities. If the claimant suffers such
> an impairment, the third inquiry is whether, based solely on medical evidence, the
> claimant has an impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider h[er] disabled
> without considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity. Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether, despite
> the claimant's severe impairment, [s]he has the residual functional capacity to
> perform h[er] past work. Finally, if the claimant is unable to perform h[er] past
> work, the [Commissioner] then determines whether there is other work which the
> claimant could perform. . . . [T]he claimant bears the burden of proof as to the first
> four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "The Social Security regulations define

residual functional capacity as the most the claimant can still do in a work setting despite the

limitations imposed by h[er] impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

### C. *Review of the Magistrate Judge's Report*

A district court reviewing a magistrate judge's report and recommendation "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1). A party may make objections to a report and recommendation

"[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ.

P. 72(b)(2); 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to

which no 'specific, written objection' is made, as long as the factual and legal bases supporting

the findings and conclusions set forth in those sections are not clearly erroneous or contrary to

law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting

Fed. R. Civ. P. 72(b)). "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Bush v. Colvin*, No. 15 Civ. 2062 (LGS) (DF), 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)). However, a party's objection "must be specific and clearly aimed at particular findings in the R&R." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted). "[T]he court will review the R&R strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments." *Id.* (internal quotation marks omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (noting that reviewing court "is only obliged to review the Report for clear error" where "objections largely reiterate the arguments made to, and rejected by" the magistrate judge); *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke de novo review of the magistrate's recommendations."). Therefore, a party that merely restates arguments made to a magistrate judge because she disagrees with the magistrate judge's decision does not warrant de novo review. *See Feria v. Larkin*, No. 11-CV-6653 (ER), 2013 WL 593855, at *3 (S.D.N.Y. Feb. 13, 2013) (reviewing for clear error where objection was "presented in a conclusory fashion, simply reflecting [petitioner's] disagreement with" the magistrate judge's findings).

## III.     Discussion

Plaintiff objects to Judge Cott's Report on four grounds:  (1) the ALJ's failure to properly evaluate the opinion evidence in the record was not harmless error; (2) the ALJ did not sufficiently develop the record; (3) periods during which Plaintiff may have been more capable of a higher degree of adjustment are unavailing as to Plaintiff's ability to engage in a sustained substantial gainful activity; and (4) the ALJ's determination was based on cherry-picking pieces of evidence from the record.[8]  (Pl.'s Obj. 5–15.)[9]

Only Plaintiff's first and second objections are "specific and clearly aimed at particular findings in the R&R."  *Bussey*, 2016 WL 7189847, at *2 (internal quotation marks omitted).  Her remaining objections merely reiterate her earlier arguments that were rejected by Judge Cott; therefore, I review these objections only for clear error.  Plaintiff has not demonstrated that Judge Cott's findings with respect to these four issues were incorrect.

I review each of Plaintiff's objections in turn below.  Additionally, I have reviewed the remainder of Judge Cott's Report for clear error and find none.

### A.  *The ALJ's Weighing of Opinion Evidence*

Plaintiff first challenges Judge Cott's determination that even if the ALJ failed to explicitly weigh certain opinion evidence, the error was harmless, (R&R at 30).  (Pl.'s Obj. 5.)  Specifically, Plaintiff asserts that the ALJ "in not explicitly weighing all the medical and other evidence presented in support by Plaintiff . . . committed reversible error."  (*Id.* at 6.)

The Social Security Regulations provide that a treating physician's opinion is given

---

[8] Plaintiff raises these issues as three objections, but for clarity's sake, I have broken them down into four distinct objections.

[9] "Pl.'s Obj." refers to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, filed January 15, 2020.  (Doc. 25.)

controlling weight, provided the opinion as to the nature and severity of an impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  The regulations define a treating physician as the claimant's "own physician, psychologist, or other acceptable medical source who provides the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant."  *Id.* § 404.1502.

Regarding opinions from acceptable medical sources, the regulations provide that "[r]egardless of its source," the ALJ "will evaluate every medical opinion . . . receive[d]," and will consider certain factors in determining the weight of the opinion.  *Id.* § 416.927(c). Regarding opinions of those who are not acceptable medical sources and opinions from nonmedical sources, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* § 416.927(f)(2).

First, the opinions of Bernabe, Paden, and Laux are not considered "acceptable medical sources" under the regulations.  *See Gove v. Saul*, No. 19-CV-6839 (JPO), 2020 WL 6712201, at *4 (S.D.N.Y. Nov. 16, 2020) (licensed mental health counselor not considered an "acceptable medical source"); *Puckett v. Berryhill*, No. 17-CV-5392 (GBD) (KHP), 2018 WL 6625095, at *14 (S.D.N.Y. July 13, 2018) (holding that ALJ was not required to assign any weight to nurse practitioner's opinion where, at the time, nurse practitioners were not listed as "acceptable medical sources").[10]  The opinions of Bernabe, Paden, and Laux therefore are not subject to the

_____

[10] Following a March 27, 2017 amendment to the regulations, nurse practitioners are considered acceptable medical

treating physician rule and are not entitled to controlling weight. Plaintiff does not challenge this determination.

Plaintiff argues, however, that the ALJ improperly evaluated these opinions, (*see* Pl.'s Obj. 6–11), which is simply a reiteration of her original arguments, (*see* Pl.'s Mem. 23).[11] I do not find that Judge Cott clearly erred in his finding that the ALJ properly evaluated and weighed these opinions; and instead, will review *de novo* only Plaintiff's objection that the ALJ's failure to give explicit weight to the opinions of Dr. Stack and Dr. Gindes was not clear error. *See Bussey*, 2016 WL 7189847, at *2 ("[T]he court will review the R&R strictly for clear error when a party . . . simply reiterates the original arguments.") (internal quotation marks omitted).

"An ALJ's failure to explicitly afford an opinion weight does not constitute error if the ALJ's weight determination can be inferred from the decision." *Gogos v. Comm'r of Soc. Sec.*, No. 18-CV-1188-FPG, 2020 WL 128445, at *2 (W.D.N.Y. Jan. 10, 2020) (quoting *Goettel v. Comm'r of Soc. Sec.*, No. 1:18-CV-1285 (WBC), 2019 WL 6037169, at *4 (W.D.N.Y. Nov. 14, 2019)); *see Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that "[a]lthough the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole," and affirming denial of benefits); *Berry v. Comm'r of Soc. Sec.*, No. 14 CIV. 3977(KPF), 2015 WL 4557374, at *14 (S.D.N.Y. July 29, 2015) ("an ALJ's failure to state expressly the weight given to the opinion of a consultative source does not require reversal, so long as the ALJ took the evaluation into account in determining a claimant's RFC.").

---

sources "[i]n claims with a filing date on or after March 27, 2017." SSA POMS-DI 22505.003. Because Plaintiff's claim was filed on October 28, 2014, the ALJ was not required to give Nurse Practitioner Paden or Laux's opinions any weight. *See Puckett*, 2018 WL 6625095, at *14 n.8 (finding amendment "only applies prospectively").

[11] "Pl.'s Mem." refers to the memorandum of law in support of Plaintiff's motion for remand, filed on June 6, 2019. (Doc. 13.)

Second, the weight given the opinions of Dr. Stack and Dr. Gindes can be inferred from the record. Although the ALJ did not explicitly assign weight to Dr. Stack and Dr. Gindes, upon which he relied, and did not assign specific weight to Paden, the ALJ discussed their opinions in such a way that weight could be inferred.[12] For example, the ALJ reiterated the opinion of Dr. Stack, and noted that it was "consistent with the claimant's testimony," which indicated that she was more capable of performing work tasks than was opined by her therapists. (R. 21, 24.) With regard to the opinions of Dr. Gindes, the ALJ stated that his evaluation was consistent with the finding of Dr. Stack—Plaintiff had the ability to perform "basic, unskilled work tasks." (*Id.*) Based on this analysis by the ALJ, a reader could infer that because the opinions of doctors Stack and Gindes—both acceptable medical sources—were consistent with each other and with Plaintiff's testimony and because of the inconsistencies in Bernabe and Paden's evaluations, (*see id.* at 24), the ALJ assigned substantial weight to the opinions of doctors Stack and Gindes.

Regarding Paden, the ALJ explained that Paden submitted an evaluation similar to Bernabe stating that Plaintiff was unable to meet competitive standards in the workplace, the evaluation was in "check-off" format with no reference to clinical observations, and was inconsistent with Plaintiff's testimony. (*Id.* at 24.) Based on ALJ's discussion, a reader could infer that due to the inconsistences and lack of support offered by Paden, including the "check-off" format of the opinion, the ALJ accorded little weight to Paden's opinion.

Additionally, even if the ALJ's failure to explicitly assign weights to the opinions of Dr.

---

[12] Plaintiff does not directly address the ALJ's failure to assign specific weight to Paden's opinion in her objections or her opening motion for remand, but notes it in her reply in support of her motion for remand. (*See* Doc. 21 at 2.) By failing to raise this issue in her opening motion for remand, Plaintiff has arguably waived this argument. *See Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 611 (S.D.N.Y. 2006) ("as a general rule, courts will not consider arguments raised for the first time in a reply brief"); *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 12185082, at *2 n.2 (S.D.N.Y. Nov. 19, 2013) (finding Plaintiffs waived argument "by failing to develop it in their opening brief.").

Stack, Dr. Gindes, and Paden could be considered error, "the failure was a harmless one." *Rodriguez v. Colvin*, No. 12-CV-3931 (RJS)(RLE), 2014 WL 5038410, at *6 (S.D.N.Y. Sept. 29, 2014) (finding ALJ's failure to assign specific weight to doctor's opinion was harmless); *see, e.g.*, *Nunez v. Colvin,* No. 15 Civ. 4957 (CS) (PED), 2017 WL 684228, at *14 n. 20 (S.D.N.Y. Feb. 21, 2017) (finding that "[b]ecause the ALJ properly analyzed [the doctor's] opinion and explained his reasons for discrediting her opinion, the ALJ's failure to specify the weight he gave to the opinions is, at most, harmless error."); *Carway v. Astrue*, No. 06 Civ. 13090, 2010 WL 6121686, at *11 (S.D.N.Y. Aug. 17, 2010) (finding ALJ's failure to assign any weight to the treating physician's opinion was "harmless error" where the ALJ referred to the treating physician's report and the report was consistent with other evidence in the record); *Pease v. Astrue*, No. 5:06 Civ. 0264 (NAM/DEP), 2008 WL 4371779, at *8 (N.D.N.Y. Sept. 17, 2008) (finding ALJ's failure to comment on the weight of evidence was harmless error because where "ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians.");[13] *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.") (internal quotation marks omitted). The ALJ clearly considered each of the opinions offered in making his determination, and an explicit weighing of the three opinions would not have changed the outcome. Remand therefore is unwarranted.

---

[13] I note that many of these cases involved an ALJ's failure to explicitly give weight to a treating physician's testimony. Here, the opinions at issue were not those of treating physicians, but rather were consultative opinions and opinions from non-acceptable medical sources. This distinction further supports my conclusion that any error was harmless.

### B. *Development of the Administrative Record*

Plaintiff contends that the Commissioner failed to properly develop the administrative record because if the ALJ was unable to make a connection between Bernabe and Paden's treatment notes and their opinions, it was his duty to request more information from the source, rather than accord their opinions minimal weight. (Pl.'s Obj. 11–12.) Plaintiff also appears to be objecting on the grounds that it was improper to discount Bernabe and Paden's opinions simply because they submitted a "check-off" questionnaire where Bernabe and Paden provided extensive treatment notes. Plaintiff states that Judge Cott relied on the ALJ's consideration that both Bernabe and Paden's opinions used a "check off" format. (*Id.* at 11; *see* R&R at 28.)

As a general rule, an ALJ has an affirmative duty to develop the factual record. *Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999). Due to the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)). Moreover, "it is the well-established rule in our circuit" that such a duty exists "[e]ven when a claimant is represented by counsel." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

Contrary to Plaintiff's assertion, however, in considering Bernabe and Paden's opinions, the ALJ did not solely rely on the fact that "both evaluations were in a 'check-off' format with no reference whatsoever to specific clinical observations." (*See* R. 24.) Rather, in considering the weight to accord Bernabe's opinion, the ALJ cited to Bernabe's treatment notes, and noted that that Bernabe's evaluation was inconsistent with the evidence in the record and with Plaintiff's hearing testimony. (*Id.* at 23–24.) He further explained that Bernabe's treatment

notes in fact suggested that Plaintiff's symptoms could be controlled by medication.  (*Id.*)  And the ALJ explained that he was giving greater evidentiary weight to the contemporaneous treatment records as opposed to the opinions rendered solely for Plaintiff's disability claim.  (*Id.* at 23.)  Regarding Paden, the ALJ stated that her evaluation was also inconsistent with the testimony given at the hearing.  (*Id.* at 24.)

Furthermore, the ALJ had extensive treatment records before him, (*see, e.g.*, *id.* at 191–215, 239–244), including records dating back to as early as 2008, (*see id.* at 191).  The ALJ ultimately made his disability determination based on extensive medical evidence, including treatment notes, treating source opinions, and consultative reports and examinations from numerous practitioners.  As I have previously explained, "[w]here, as here, 'there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Vasquez v. Saul*, No. 16-CV-3610 (VSB) (DCF), 2019 WL 5682631, at *6 (S.D.N.Y. Nov. 1, 2019) (quoting *Rosa*, 168 F.3d at 79 n.5) (finding remand unwarranted where claimant objected that ALJ should have further developed the record).  Remand is not warranted on these grounds.

### C.  *Evidence Regarding Plaintiff's Capabilities*

Plaintiff also objects on the ground that the ALJ based his residual functional capacity ("RFC") determination on evidence in the record describing that during certain periods "Plaintiff was capable of a higher degree of adjustment, mental functioning, and social interaction."  (Pl.'s Obj. 11.)  Plaintiff argues that "a temporary improvement in the claimant's condition does not warrant a finding that the individual is no longer disabled."  (*Id.*) (quoting *Coughlin v. Sec'y of Health & Human Servs.*, 671 F. Supp. 138, 141 (E.D.N.Y. 1987)).  She also asserts that her

participation in activities of daily living is not indicative of her ability to have gainful employment. (*Id.* at 12–13.)

Here, Plaintiff merely repackages her original argument that the ALJ's RFC finding was not supported by substantial evidence. (*See* Pl.'s Mem. 1; Pl.'s Reply at 8–9.)[14]  Plaintiff asserts that "Magistrate Judge Cott's report echoes and reiterates the ALJ's finding that because Plaintiff might have, at times, been capable of some work, and might generally have been able to perform some activities of daily living, this demonstrates that she was capable of ongoing substantial gainful activity." (Pl.'s Obj. 12.)  Because Judge Cott appropriately addressed these same concerns in his Report, I need not spill much ink devoted to such arguments here.

Generally,

> [t]he Commissioner must exercise great care in reaching conclusions about the claimant's ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on the claimant's ability to complete tasks in other settings that are less demanding, highly structured or more supportive.

*Harris v. Colvin*, 149 F. Supp. 3d 435, 445 (W.D.N.Y. 2016) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (C)(3)).

In making his RFC determination, the ALJ noted that "[t]he medical record suggests that [Plaintiff] responded positively to treatment with Wellbutrin." (R. 22.)  He recounted how Plaintiff's symptoms varied in severity over the years, and described how Plaintiff attended school three days a week, performed household chores, used her computer and smartphone, and read. (*Id.* at 20–24.)  Ultimately, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

---

[14] "Pl.'s Reply" refers to Plaintiff's reply in support of her motion for remand, filed on October 9, 2019. (Doc. 21.)

symptoms are not entirely consistent with the" evidence.  (*Id.* at 20.)  He found that Plaintiff had the RFC to perform a full range of work at all exertional levels with the limitation that she could only perform simple, basic, unskilled, routine, repetitive type work.  (*Id.* at 19.)

First, the ALJ did in fact take "great care" in reaching his determination that Plaintiff could perform simple, basic, unskilled, routine, and repetitive type work.  The ALJ considered the medical opinions before him, the extensive record, Plaintiff's testimony, and took into account Plaintiff's "limitations in the domain of mental functioning." (*Id.* at 19–24.)  For example, at the hearing, he hypothesized that a store stock person who stocked the shelves at night could be a job that would accommodate Plaintiff's anxiety around crowds.  (*Id*. at 38–39.)  The ALJ explained in his opinion that Plaintiff's limitations seemed to affect her academic abilities, and that she appears to have few limitations in non-academic activities.  (*Id.* at 23.)  Finally, while Plaintiff did describe her impairments, she also indicated that she could work as a housekeeper or cleaner.  (*Id.*)

Second, the ALJ did not make his finding of no disability solely based on the fact that at times Plaintiff's symptoms improved.  Rather, in considering all of the evidence before him, the ALJ found that the limitations of Plaintiff's symptoms were not so severe that Plaintiff could not perform unskilled jobs that were "simple, routine and repetitive on a sustained basis." (*Id.* at 22–23.)  He found that the evidence, including Plaintiff's own testimony, demonstrated that she was "much more functional than alleged in her application." (*Id.* at 23.)  Although as Judge Cott observed, "the ALJ may have overstated Withus's ability to handle stress and changes in routine," (R&R 52), the ALJ considered and cited extensively to evidence within the record that supported his determination of Plaintiff's mental functioning.  *See Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (finding that while "a person suffering from bipolar disorder may be

vulnerable to violent mood swings resulting in better days and worse days, and that a claimant's stability on *some* days does not necessarily support the conclusion that he is able to work *every* day," substantial evidence supported the ALJ's conclusion that claimant "with the proper treatment, could perform work on a regular and continuing basis.") (internal quotation marks omitted). I therefore find remand unwarranted on these grounds.

## D. *Cherry-Picking the Evidence*

Finally, Plaintiff objects on the ground that Judge Cott "effectively condoned the ALJ's practice of cherry-picking of bits and pieces of evidence from the hearing testimony and from the opinions of record." (Pl. Obj. 14.) Again, this "cherry-picking" argument is another iteration of Plaintiff's previous argument—that the ALJ's RFC determination was not supported by substantial evidence.

An "ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Additionally, "[a]n administrative law judge may not cherry-pick medical opinions that support his or her opinion while ignoring opinions that do not." *Annabi v. Berryhill*, No. 16-CV-9057 (BCM), 2018 WL 1609271, at *16 (S.D.N.Y. Mar. 30, 2018) (internal quotation marks omitted) (collecting cases). This, however, "does not mean that an ALJ is required to accept or reject a medical expert's opinion *in toto*. Some portions may be entitled to greater weight than other portions." *Id.* "What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (internal quotation marks omitted).

Here, contrary to Plaintiff's contention, the ALJ did not "cherry-pick" evidence from the record, and did not substitute his own view for that of medical professionals. Instead, the ALJ

reviewed the evidence and provided explanations for why he was accepting certain evidence and rejecting other evidence, including on the grounds that certain opinions were inconsistent with the evidence in the record and with Plaintiff's testimony. (*See* R. 22–24.) The ALJ did not simply ignore evidence that did not support his decision. *Cf. Rosado v. Saul*, No. 19 Civ. 8073 (PED), 2021 WL 22153, at \*17 (S.D.N.Y. Jan. 4, 2021) (remanding where ALJ improperly "cited only the evidence to support her desired RFC finding while ignoring the substantial evidence supporting a greater degree of limitations."). I find that that ALJ did not improperly cherry-pick evidence from the record. Additionally, Judge Cott did not "condone" this alleged cherry-picking. (*See* Pl.'s Obj. 14.) Judge Cott's Report is thorough and well-reasoned; it considers the extensive evidence before the ALJ, including evidence both favorable and unfavorable to Plaintiff. Finally, Judge Cott's determination that the ALJ's RFC determination was supported by substantial evidence was not clear error.

### E. *Remainder of the Report*

I have reviewed for clear error the remainder of Judge Cott's thorough Report and find none.

### IV. <u>Conclusion</u>

Based upon the above, I adopt the Report in its entirety, and overrule Plaintiff's objections. Plaintiff's motion for judgment on the pleadings, (Doc. 12), is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, (Doc. 19), is GRANTED.

The Clerk of Court is respectfully directed to enter judgment on behalf of Defendant and close this case. The Clerk of Court is directed to close the open motions at Docket Entries 12 and 19.

SO ORDERED.

Dated:  May 19, 2021
        New York, New York

Vernon S. Broderick
United States District Judge